## TOWNSEND v. MEYERS.

(Supreme Court, Special Term, New York County.   June 16, 1910.)

1. PARTNERSHIP (§ 316*)—DISSOLUTION OF PARTNERSHIP—ACTION FOR ACCOUNTING—RETURN OF CONSIDERATION FOR DISSOLUTION.

  Where plaintiff, a partner of defendant in the practice of law, transferred to defendant all of his interest in the business jointly owned by them for a stated consideration, which was received by him, plaintiff could maintain an action for an accounting without offering to return the consideration so received, as he was entitled to that sum irrespective of his success or failure in the action.

  [Ed. Note.—For other cases, see Partnership, Cent. Dig. § 732;  Dec. Dig. § 316.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. PARTNERSHIP (§ 321*)—DISSOLUTION—ACTION FOR ACCOUNTING—LIMITATION OF STATUTES.

Where a partner after dissolution sues to recover an item fraudulently omitted from the settlement, the period of statutory limitation only will bar the accounting, and the suit will not be barred by laches because plaintiff delayed for more than a year after acquiring knowledge of the omitted item before bringing suit.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 742–745; Dec. Dig. § 321.*]

3. PARTNERSHIP (§ 328*)—DISSOLUTION—ACTION FOR ACCOUNTING—EVIDENCE.

In an action by a partner to compel his former partner to account for a fee received by him, evidence *held* sufficient to show that the transaction for which the fee was received was a partnership transaction.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 781; Dec. Dig. § 328.*]

Action by Robert Townsend against Sidney S. Meyers. Judgment for plaintiff.

See, also, 126 App. Div. 954, 111 N. Y. Supp. 1147; 134 App. Div. 540, 119 N. Y. Supp. 478.

Cambridge Livingston (Clarence Blair Mitchell and Cambridge Livingston, of counsel), for plaintiff.

Samuel Bitterman (Edward W. S. Johnston, of counsel), for defendant.

DAYTON, J. This is an action for an accounting of partnership assets of the law firm of Townsend & Meyers. Plaintiff claims that the copartnership began in January, 1902; that the proceeds of a certain retainer accepted by the defendant in June, 1902, were partnership assets; and that on the subsequent dissolution of the firm the defendant on his accounting fraudulently omitted the proceeds of the said retainer. The defendant claims that the copartnership did not begin until February 1, 1902, that the retainer was his individual business, and that the proceeds thereof were not firm assets. The retainer referred to was an employment of the defendant by one Bertha Strange to collect for her a claim for damages against a certain railroad company, and was effected on January 9, 1902, although the writing evidencing the agreement was not executed until later in January. Under this contract between Bertha Strange and the defendant, the latter was to receive 50 per cent. of any amount recovered by trial, compromise, or otherwise, in addition to costs and disbursements. This claim was adjusted at the sum of $10,000 and $500 counsel fee, and these sums were paid to the defendant about May 19, 1902, upon a general release executed by Bertha Strange. The partnership was dissolved on June 5, 1902, by an instrument in which the plaintiff, for a recited consideration of $78, and "other valuable considerations," agreed to assign and transfer to the defendant all his right, title, and interest in and to the business jointly owned by them, "and the fees therefor, whether due in the past or future, and any and all cases belonging to said firm"; and, in consideration of the assumption by the defendant of liability for rent of the firm's offices, plaintiff agreed to

pay the defendant the sum of $15 per month during the term of the lease.

I will dispose preliminarily of the objections that the $78, consideration received by the plaintiff under the dissolution contract, was not returned, and that, the bringing of this suit having been delayed for more than a year after the plaintiff acquired knowledge of the Strange retainer, he (plaintiff) is barred by laches from recovering. Neither objection is tenable. The case is one in which the $78 are concededly due to plaintiff; it is a sum to which he would be entitled irrespective of his success or failure in this action. Staiger v. Klitz, 136 App. Div. 874, 122 N. Y. Supp. 107; Kley v. Healy, 127 N. Y. 555, 28 N. E. 593. In a case for the recovery of an item fraudulently omitted from an accounting, I think the period of statutory limitation only will bar the remedy; and, if that is not so, certainly there was no unreasonable delay under all the circumstances, and the defendant was in no way prejudiced by such delay as there was. Lightfoot v. Davis, 198 N. Y. 261, 91 N. E. 582; Bosley v. Nat. Mach. Co., 123 N. Y. 550, 25 N. E. 990; Cox v. Stokes, 156 N. Y. 511, 51 N. E. 316; Treadwell v. Clark, 190 N. Y. 60, 82 N. E. 505; Id., 73 App. Div. 473, 77 N. Y. Supp. 350.

This leaves for determination a pure question of fact: Was the Bertha Strange claim a copartnership asset, which depends upon the time of the commencement of the partnership, and were the proceeds of that claim fraudulently omitted from the partnership accounting by the defendant? The plaintiff testified that in the fall of 1901 he and the defendant had many conversations with respect to the forming of a copartnership between them, which culminated in a visit by the defendant to plaintiff's home on Long Island on December 29, 1901, at which time the partnership agreement was made. No written articles were executed, but that a partnership actually existed at some time after December 29, 1901, is conceded, and the question is: Did it begin prior to the employment of the defendant by Bertha Strange? The plaintiff relies upon his own testimony and the acts of the parties immediately after the visit of the defendant to his home on December 29, 1901. Plaintiff swore that the visit of December 29, 1901, was the only one that the defendant ever made to the former's home, and in support of his testimony as to such visit he introduced a guest book in which it was his custom to have guests at his home write their names, and showed the names of the defendant and his wife therein, in the handwriting of the defendant, under date December 29, 1901. The defendant at the outset swore that his first conversation with the plaintiff with respect to a partnership was on January 5, 1902, on which occasion he was at plaintiff's home on Long Island, and he was certain that he had not visited plaintiff's home at any other time. He was so sure of this that he remembered the smallest details of the occasion, even down to the dishes served at dinner. In support of his claim to have visited plaintiff on January 5, 1902, he introduced a copy of a telegram procured from the telegraph company's agent at Oyster Bay, addressed to the plaintiff and bearing the figures "5/02," announcing that the defendant had missed a morning train and would arrive at a later hour in the afternoon; and then, upon being con-

fronted with the guest book above referred to, he receded from his former position and said he made two visits to the plaintiff's home.

The plaintiff, though at first he had no recollection of the telegram, after consulting with his wife still maintained that there was but one visit, and that the telegram was sent on that date; that is, December 29, 1901. The discrepancy in this evidence cannot perhaps be entirely explained, but that the defendant visited the plaintiff on December 29, 1901, there can be no doubt. Subsequently to this visit, or to both visits, if there were two, the parties selected offices at No. 38 Park Row, and on January 8, 1902, executed a lease therefor, "individually and as copartners composing the firm of Townsend & Meyers and the said firm of Townsend & Meyers," for two years and three months from February 1, 1902, and on January 8, 1902, the lessor received from "Townsend & Meyers" one month's rent for said offices from February 1 to March 1, 1902. The offices were partially occupied pending alterations therein which were begun early in January. Firm stationery and cards were ordered by Mr. Meyers and were printed and delivered before January 9, 1902. In January plaintiff transferred some business from his old firm of Townsend & Mann to the firm of Townsend & Meyers. The Bertha Strange retainer was executed after January 8, 1902, upon a printed blank form of the firm of Townsend & Meyers, the words "Townsend &" being stricken out, and the words "Sidney S." being interpolated before the word "Meyers" therein. The cards bore date "January, 1902," and announced that the copartnership had been formed. Defendant says that the copartnership was to begin on February 1, 1902, and that under his agreement with the plaintiff the latter was to give up his position as assistant district attorney on that date; but on June 5, 1902, when the firm was dissolved upon a sudden and hurried demand by the defendant, the plaintiff still occupied his position as assistant district attorney, and the cards announcing the partnership that was not to commence until February 1, 1902, described Mr. Townsend as "assistant district attorney."

The positions of the parties and their relations to each other before the formation of this partnership have their bearing upon the probability of their respective stories. The plaintiff was an assistant district attorney, receiving a salary of $7,500 per year, had occupied that position through several administrations of the district attorney's office, and was a man of long experience at the bar. He was a member of the firm of Townsend & Mann, from which he retired on January 1, 1902, the time he says his partnership relation with the defendant began. Prior to December 29, 1901, plaintiff and defendant were well known to each other. Defendant was a young man and had occupied desk room in the office of Townsend & Mann. It was here he first broached the partnership with the plaintiff, suggesting his own youth and activity as a fitting combination with plaintiff's experience at the bar.

These circumstances, in connection with the other facts already detailed, are not calculated to support the position that the defendant dictated to the plaintiff the condition that the latter should give up his position as assistant district attorney by February 1, 1902. Some tes-

timony was introduced to show that the firm of Townsend & Mann was still in existence in January, 1902, in support of the view that the partnership of Townsend & Meyers was not to begin until February 1, 1902; but I think it was not of such character as to overcome the testimony of Mr. Townsend that he retired from the firm of Townsend & Mann on January 1, 1902, as to which date he is fully corroborated by the testimony of Mr. Mann himself. Although the rent of the firm's offices did not commence until February 1, 1902, a consideration of all the testimony and circumstances in this regard lead me to the conclusion that the copartnership began on January 1, 1902, or at least prior to January 9, 1902, when the Bertha Strange retainer was effected. It is conceded that the proceeds of the Strange claim were not accounted for. The evidence shows that Mr. Townsend had no knowledge of the Strange retainer, or of the settlement of the claim until after the dissolution, to wit, in the year 1906. The settlement of the claim was had on May 19, 1902, when defendant collected the proceeds, and he had them when he accounted with the plaintiff on the 5th of the following month. The defendant had the management of the business of the firm and had full charge of its books and papers. His relation to the plaintiff was one of trust and confidence, imposing upon him the duty of utmost good faith in his dealings and of full disclosure upon the accounting. This duty he did not perform; and I may add finally, in this connection, that it is not an insignificant fact that, with the proceeds of the undisclosed Strange claim in his hands, he should have hurriedly, peremptorily, and in an almost violent manner demanded a dissolution without affording an opportunity for an orderly investigation of the partnership affairs, under the circumstances detailed by the plaintiff. I am of opinion that plaintiff is entitled to an accounting of the proceeds of the claim of Bertha Strange in defendant's hands, but a reference will not be necessary.

In former proceedings before Justice Greenbaum in this court, brought by Bertha Strange against this defendant to require him to pay over to her the balance of the $10,000 collected by him on her claim, and to fix the fees, although by the terms of said retainer he was entitled to receive 50 per cent. of the recovery, he was finally required to pay her the whole of the said $10,500 less $2,700, which was allowed him for his fees. In that proceeding defendant claimed to have paid $1,000 counsel fees to Mr. Bitterman, which was disallowed by the judge who determined the matter. The defendant has paid to Mr. Fox a fee of $450. The fee of $1,000 paid to Mr. Bitterman cannot be justified. Under the terms of the Bertha Strange retainer, defendant properly retained counsel in the proceeding brought by her, and therefore the counsel fee of $450 paid to Mr. Fox should be allowed, together with the $100 cost of printing papers on appeal in said proceeding. Deducting these sums, aggregating $550, from the $2,700 remaining in defendant's hands, there is due from him to the plaintiff the sum of $1,075, with interest from June 5, 1902, and costs of this action.

Submit findings and judgment in accordance herewith, on notice.