## YOUNG et al. v. SOUTHERN PAC. CO.

Circuit Court of Appeals, Second Circuit.
April 9, 1928.

No. 280.

**Removal of causes ⊙—108—After removal, plaintiff held not entitled to order dismissing complaint without prejudice, in order to begin second state court litigation.**

Where suit instituted in state court was transferred to federal court, plaintiffs *held,* not entitled to order of discontinuance dismissing complaint without prejudice, where application to discontinue was not with idea of ending litigation, but concededly for purpose of second litigation in state court.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by Mary S. Young, as executrix, etc., and others, against the Southern Pacific Company. From an order of discontinuance, dismissing the complaint without prejudice, defendant appeals. Reversed.

See, also, 15 F.(2d) 280.

Humes, Buck & Smith, of New York City (Gordon M. Buck, of New York City, of counsel), for appellant.

Dudley F. Phelps, of New York City (Frank M. Swacker, of New York City, of counsel), for appellees.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge. These appellees belong to the class of stockholders who sought to intervene in a stockholders' action and who are referred to in Southern Pacific Co. v. Bogert, 250 U. S. 483, 39 S. Ct. 533, 63 L. Ed. 1099, and Bogart v. Southern Pacific Co. (C. C. A.) 290 F. 727, certiorari denied 263 U. S. 708, 44 S. Ct. 36, 68 L. Ed. 517.

In 1888, the Houston & Texas Central Railroad Company was organized and new securities issued. The appellees, seeking to impress a trust upon a portion of the stock issued by the new Houston & Texas Central Railway Company which reached the hands of the appellant, began this suit May 10, 1926, in the state court. On May 24, 1926, the appellant filed a petition and bond removing the case to the federal court upon the ground that it contained a separable controversy. The appellees resisted, arguing that the cause was not removable, and insisted upon having the question of removability determined by the state court. The District Court issued an order to show cause on May 28, 1926, to the appellant, directing the appellees to show cause why the proceedings in the state court should not be restrained. On the return of that order, the appellees stipulated to extend the appellant's time to answer in the state court should the jurisdiction of the federal court not be sustained. The motion for an injunction was denied without prejudice. On January 16, 1926, the state court held that there was no separable controversy and that the alleged causes of action were joint, and attempted to retain jurisdiction. Thereupon a second order to show cause was obtained in the District Court with a stay of proceedings in the state court, and, when heard, it was decided that each plaintiff had a separate cause of action, and while, as a general rule, the removal of the separable controversy carried the entire case to the federal court, this was a case not containing several causes of action but of several separate suits united under state practice, and that therefore only the causes of action of those plaintiffs were removed in which the requisite diversity of citizenship existed. An order was accordingly entered on this decision, adjudging that the suit had been removed to the federal court with respect to all the plaintiffs excepting two, and enjoining the plaintiffs, with these two exceptions, from taking further proceedings in the state court. On appeal, this order was affirmed. ([C. C. A.] 290 F. 727.)

On June 24, 1926, after the decision in the District Court, the appellant moved to dismiss the complaint for laches. The motion was adjourned from time to time, and on November 29, 1928, after affirmance by this court of the order appealed from, the appellees moved for leave to discontinue the suit and dismiss the bill without prejudice. It was conceded by the appellees that they intended to institute a new suit in the state court and vary the allegations of the new complaint so as to avoid the removal of the proposed suit to the federal court. Both motions were heard on December 7, 1926, and later the appellee's motion to dismiss was granted without prejudice on the following memorandum: "Motion granted on payment of costs. See Ex parte Skinner & Eddy Corporation, 265 U. S. 86 [44 S. Ct. 446, 68 L. Ed. 912]."

Southern Pacific Co. v. Bogert, 250 U. S. 483, 39 S. Ct. 533, 63 L. Ed. 1099, was a suit by the minority stockholders of the railroad company whose property had been sold under foreclosure to the defendant corporation. The latter controlled the majority of the stock and had been decreed to be entitled to receive from the defendants stock in a reorganized corporation on surrender of

their original stock and payment to the defendant of the amounts expended for the benefit of the reorganized corporation, and it was held that the defendant was entitled to credit for the amount of the claims against the original corporation which were in fact held by it and which were inferior to the debt foreclosed and were lost by the foreclosure proceeding. This class of stockholders, of which the present appellees were members, were held to be entitled to recover from this appellant who, as a majority stockholder, had been responsible for the sale of the railroad company's property under foreclosure and to stock in a reorganized company on surrendering their own stock and paying their portion of the amounts expended by the appellant for the benefit of the new company. Also that the appellant was not entitled to the consequent acquisition, by the reorganized company, of branch lines and coal mines since they were but improvements had after they had been acquired, and whatever value there may be therein was reflected in the value of the new stock and that the loss resulting was similarly represented. It was also held that other stockholders of the class were not entitled, as a matter of right, to intervene in the stockholders' action and claim the benefits of the suit after final decree had been entered, and the final effect of the decree was not destroyed by an appeal therefrom which resulted in a remand for further determination of the amounts to be paid by stockholders. In Southern Pacific Co. v. Bogart (C. C. A.) 290 F. 727, minority stockholders who did not, during the period, intervene in the suit, were held not to be entitled to intervene as a matter of grace after filing the decree establishing their rights had been entered, because their demands were stale, having existed for more than 30 years, and that they were guilty of laches in enforcing them. The motion of the appellant, based on the claim that the appellees were guilty of laches, was grounded upon the right to have the cause tried in the District Court. The federal court had held that the stockholders who sought to intervene were guilty of laches. The application to discontinue was not with an idea of ending the litigation, but concededly for the sole purpose of a second litigation upon the subject-matter which would manifestly be annoying and might be prejudicial to the appellant. Leave to dismiss a bill and discontinue the action is not granted where such promised second litigation would constitute an annoyance and an avoidance of that which had been determined.

Pullman's Car Co. v. Central Transp. Co., 171 U. S. 138, 146, 18 S. Ct. 808, 43 L. Ed. 108; Chicago, etc., A. R. R. Co. v. Union Rolling Hill Co., 109 U. S. 702, 713, 3 S. Ct. 594, 27 L. Ed. 1081; Welsbach Light Co. v. Mahler (C. C.) 88 F. 427. This adjudication which the appellant has secured fixing the rights and responsibilities of stockholders and the conditions under which they may have the benefits secured by stockholders' action, we think, was prohibitive of permitting a voluntary discontinuance against the protest of the appellant. Individual Drinking Cup Co. v. News Co. (C. C. A.) 250 F. 625; Amer. Bell Telephone Co. v. Western Union Tel. Co. (C. C. A.) 69 F. 666.

The authority relied upon below (Ex parte Skinner & Eddy Corp., 265 U. S. 86, 44 S. Ct. 446, 68 L. Ed. 912), was a case where suit was begun in the Court of Claims for a balance due on a construction contract. On August 15, 1921, no answer or notice of any counterclaim having been filed by the government, a general traverse was entered by the clerk of the court under one of its rules. No future pleadings were filed, and no proceedings were had until April 11, 1923, when the petitioner filed its motion to dismiss the suit without prejudice. On June 3, 1923, the government moved for a reargument of the petitioner's motion to dismiss and for leave to file a counterclaim, and thereafter the order of dismissal was vacated and leave granted to file a counterclaim. A petition was then filed by Skinner & Eddy Corporation to the Supreme Court for a rule on the Court of Claims directing it to show cause why it should not be required by mandamus or prohibition to restore the suit dismissing the suit and to abstain from attempting exercise of further jurisdiction in the case. This petition was granted. At the time the discontinuance was asked, the defendant had done nothing to file a general denial. The case was at law and under the rule of the common law, when no affirmative relief is asked for by a defendant, the plaintiff may discontinue his action without prejudice at any time before trial as a matter of right. It should be recognized that the rules of law referred to in the opinion were intended to apply to the particular facts of that cause. In Barrett v. Virginian Ry. Co., 250 U. S. 473, 39 S. Ct. 540, 63 L. Ed. 1092, the court permitted the plaintiff to discontinue under the terms of the state statute, and pointed out that the practice in the federal courts was required to be the same as in the state courts.

United States Code, title 28, § 731 (28

USCA § 731) Rev. Stat. § 918, authorizes the District Court to make rules regulating the practice in any manner not inconsistent with any law of the United States or with any rule prescribed by the Supreme Court under section 730 of this title. The special Equity Rule 4 of the Southern and Eastern Districts of New York authorizes the court, when justice requires, to refuse to permit a plaintiff to discontinue. It does not conflict with any rule prescribed by the Supreme Court. Equity Rule 79 of the Supreme Court permitted the District Court, with the concurrence of the majority of the Circuit Judges, to make and enforce special Equity Rule 4. That rule would as well have warranted the denial of the motion which was granted below.

We do not pass upon the motion to dismiss the complaint for laches. That is a matter which must be passed upon by the District Court. It was error to grant the motion to discontinue under these circumstances.

Order reversed.

SWAN, Circuit Judge, concurs in the result.

L. HAND, Circuit Judge (concurring). The phrase, "issue joined," in Rule 4 of the Local Equity Rules of the Southern District of New York does not, I think, include a motion to dismiss the bill made under Equity Rule 29. The local rule was drawn after the Equity Rules were in force, and as Equity Rule 31 enacts that "the cause shall be deemed at issue upon the filing of the answer," "issue joined" in the local rule must refer to the "issue" so defined.

Perhaps the other basis of the majority opinion is enough to dispose of the case; that is, that the defendant got an affirmance by this court of its right to remove, and an injunction against any further proceedings in the state court, but I am not thoroughly persuaded that it is, and it seems to me safer to rest the decision upon a narrower ground. The whole immediate controversy really turns on the defendant's right to plead the plaintiff's laches, and this depends upon its power to remove the suit to the federal court and keep it here. The plaintiffs drew the bill at bar in such a way that, as they supposed, it would resist removal. They have been disappointed, and frankly avow that they hope to contrive another which will succeed if they can get rid of this.

The importance of all this lies in the fact that the defendant has never designated any one on whom process can be served in New York, and, being a foreign corporation, may not therefore plead the statute of limitations in that state. Comey v. United Surety Co., 217 N. Y. 268, 111 N. E. 832, Ann. Cas. 1917E, 424. If this were a case where the remedy sought were discretionary, laches would nevertheless be a defense (Groesbeck v. Morgan, 206 N. Y. 385, 99 N. E. 1046), but the cause of suit is a constructive trust, a creature of equity, for which only equitable remedies are available, and those not discretionary. It is at best extremely doubtful whether in such a situation there is any doctrine of laches independent of the statute. Galway v. Metropolitan Ry., 128 N. Y. 132, 28 N. E. 479, 13 L. R. A. 788; Cox v. Stokes, 156 N. Y. 511, 51 N. E. 316; Treadwell v. Clark, 190 N. Y. 51, 82 N. E. 505; Derby v. Yale, 13 Hun, 273; Cardwell v. Clark, 94 Misc. Rep. 433, 158 N. Y. S. 300. Pollitz v. Wabash Ry., 207 N. Y. 113, 100 N. E. 721, involved a legal right, and is perhaps beside the point, but at least it does not serve to lay the doubt. On the other hand, as this is a suit in equity, the District Court is not bound by the state statute of limitations, Benedict v. City of N. Y., 250 U. S. 321, 327, 39 S. Ct. 476, 63 L. Ed. 1005, and laches if proved would be a good bar.

Ordinarily the mere fact that a plaintiff prefers the state courts ought not to prevent his discontinuing his suit (Harding v. Corn Products Refining Co., 168 F. 658 [C. C. A. 7]); one court is as good as another. But the situation changes when there is substantial doubt whether the courts will not apply different rules, and when the plaintiff's purpose is so to maneuver the litigation that the defendant will lose his existing advantage. The loss of the federal forum then becomes a grave prejudice, quite as much as, and indeed more than, the expense and delay in trying the suit up to decree, or even the failure of a cross-bill.